IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHARON M. ADORNO,                )
                                 )
                Plaintiff,       )
                                 )
        v.                       )   Civil Action No. 15-204J
                                 )
CAROLYN W. COLVIN,               )
ACTING COMMISSIONER OF           )
SOCIAL SECURITY,                 )
                                 )
                Defendant.       )

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 23rd day of January, 2017, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 22) be, and the same hereby is, granted, and plaintiff's motion for summary judgment (Document No. 18) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications for disability insurance benefits and SSI on June 13, 2012, alleging a disability onset date of May 25, 2012, due to depression, bipolar disorder, anxiety, mood disorder and scoliosis. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on January 17, 2014, at which plaintiff, represented by counsel, appeared and testified. On January 31, 2014, the ALJ issued a decision finding that plaintiff is not disabled. On June 16, 2015, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 50 years old on her alleged onset date and is classified as a person closely approaching advanced age under the regulations. 20 C.F.R. §§404.1563(d) and 416.963(e). She has at least a high school education and has past relevant work experience as a personal home health aide, a collections clerk and a receptionist, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although plaintiff has the severe impairments of affective disorder, anxiety-related disorder, personality disorder, scoliosis, cervical and lumbar degenerative disc disease and obesity, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity ("RFC") to engage in work at the light exertional level but with numerous restrictions necessary to accommodate her physical and mental impairments.[1] Taking into account these restrictions, a

---

[1] Specifically, the ALJ determined that plaintiff has the RFC to perform light work with the following additional restrictions: she "requires the option to alternate sitting and standing at will; occasionally crouch/squat, kneel, and climb ramps or stairs; limited to jobs that can be learned in one month, involve only repetitive or short-cycle tasks, and no more than occasional decision making or
AO 72
(Rev. 8/82)

vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including electronic accessories assembler, non-government mail clerk and conveyor line bakery worker. Relying on the vocational expert's testimony, the ALJ found that although plaintiff is unable to perform any of her past relevant work, she is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R.

---

judgment; no production rate or pace work; no more than occasional work setting changes; and no more than occasional interaction with others, including supervisors, coworkers, and the general public." (R. 20)

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.3d at 432; 20 C.F.R. §§404.1520a and 416.920a.

§§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; *see* Barnhart v. Thomas, 540 U.S. 20 (2003).

Here, plaintiff raises a plethora of challenges to the ALJ's decision: (1) the ALJ erred at step 2 in finding that several of plaintiff's medically determinable impairments are "not severe" under the regulations; (2) the ALJ erred at step 3 in finding that plaintiff's severe mental impairments do not meet or equal the criteria of Listings 12.04 and 12.06; (3) the ALJ failed to give proper weight to the opinion of the consultative psychologist; (4) the ALJ's RFC finding fails to account for all of plaintiff's limitations; and, (5) the ALJ improperly evaluated plaintiff's credibility. Upon review, the court is satisfied that the ALJ correctly evaluated all of the evidence under the appropriate standards and that all of the ALJ's findings at every step of the sequential evaluation process are supported by substantial evidence.

Plaintiff's first argument is that the ALJ erred at step 2 of the sequential evaluation process in finding that several of plaintiff's medically determinable impairments, including hypertension, hyperlipidemia, pre-diabetes, vitamin D deficiency, hypothyroidism, and recurrent right-sided paresthesias and chronic severe headaches secondary to a benign brain tumor, are not "severe" within the meaning of the regulations.[3] The court is satisfied that the ALJ's step 2 finding is supported by substantial evidence.

At step two, the ALJ must determine whether the claimant has a "severe medically determinable physical ... impairment that meets the duration requirement ...." 20 C.F.R. §§404.1520(a)(4)(ii) and 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§404.1520(c) and

---

[3] In addition, the ALJ also considered alcohol abuse, restless leg syndrome and gastroesophageal reflux disease at step 2 and determined those impairments likewise are not severe. Plaintiff does not take issue with the ALJ's step 2 finding in regard to these three impairments.

416.920(c). The duration requirement mandates that the severe impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1509 and 416.909.

The step two inquiry is a *de minimus* screening device and, if the evidence presents more than a slight abnormality, the step two requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546. The claimant bears the burden at step 2 of establishing that an impairment is severe. *See* McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3rd Cir. 2004).

Here, while not an exacting one, it nevertheless was plaintiff's burden to show that her medically determinable impairments result in more than a *de minimus* effect on her ability to perform basic work functions. She did not meet that burden. As the ALJ explained in her decision, all of the impairments which she found to be not severe typically are well-controlled with minimal, conservative treatment and medication, and none cause more than minimal limitation in plaintiff's functioning. (R. 15-16). The court finds no error in the ALJ's thorough evaluation of these impairments at step 2.

It also is important to note that the ALJ did not deny plaintiff's claim at step 2. McCrea, 370 F.3d at 360-61 (the Commissioner's determination to deny a claim at step 2 "should be reviewed with close scrutiny" because step 2 "is to be rarely utilized as a basis for the denial of benefits".) Instead, the ALJ considered the impact of all of plaintiff's medically determinable impairments, severe and not severe, on plaintiff's RFC and found no additional limitations that would result from her non-severe impairments beyond those accounted for in the RFC finding.

Accordingly, the ALJ's failure to find additional severe impairments at step 2 had no effect on the ultimate determination of non-disability.[4]

Plaintiff's next argument is that the ALJ erred at step 3 of the sequential evaluation process in finding that plaintiff's mental impairments do not meet or equal Listing 12.04 for affective disorders and/or Listing 12.06 for anxiety related disorders. This argument also is without merit as substantial evidence supports the ALJ's step 3 finding.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §§404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is *per se* disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The ALJ has the burden to identify the relevant listed impairments in the federal regulations that compare with the claimant's impairments and must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id. However, the claimant has the burden to present medical findings that show that her

---

[4] To the extent plaintiff contends that the ALJ should have sent her to a consultative examiner to further develop the record as to her non-severe impairments, her contention is without merit. The Regulations authorize the ALJ to obtain a consultative examination *if* the information needed to make a disability determination, "such as clinical findings, laboratory tests, a diagnosis or a prognosis" cannot be obtained from the claimant's medical sources. 20 C.F.R. §§404.1519a(a) & (b) and 416.919a(a) & (b). After consideration of the available evidence, the Regulations provide that a consultative examination *may* be purchased "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to support a decision on your claim." 20 C.F.R. §§404.1519a(b) and 416.919a(b). Here, however, there was no inconsistency in the evidence and the evidence as a whole was sufficient to support the ALJ's evaluation of plaintiff's non-severe impairments without the need for a consultative examination.

AO 72
(Rev. 8/82)

impairment matches or is equal in severity to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

Here, the ALJ correctly identified Listings 12.04 and 12.06, along with Listing 12.08 (personality related disorders), as those corresponding to plaintiff's mental impairments, and substantial evidence supports the ALJ's determination that plaintiff failed to meet the "B" criteria of any of those listings.[5] The "B" criteria of listings 12.04, 12.06 and 12.08 are identical and require that a claimant's mental impairment must result in at least <u>two</u> of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or, 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listings 12.02B, 12.04B and 12.08B. (emphasis added).[6]

Here, the ALJ reviewed all of the evidence and determined that plaintiff's mental impairments result in <u>mild</u> restrictions in activities of daily living; <u>moderate</u> difficulties in maintaining social functioning; <u>moderate</u> difficulties in concentration, persistence or pace; and

---

[5] Listings 12.04 and 12.06 provide that the "required level of severity ... is met [only] when *both* the A and B criteria are satisfied, *or* when the C criteria are met," (emphasis added). The ALJ also found that plaintiff does not meet the "C" criteria of either Listing 12.04 or 12.06. (R. 16). Plaintiff does not challenge that finding. Listing 12.08 does not contain any C criteria.

[6] Under the Regulations, the ALJ is to rate the degree of a claimant's functional limitation "based on the extent to which [the] impairment(s) interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§404.1520a(c)(2) and 416.920a(c)(2). With regard to the functional areas of activities of daily living, social functioning and concentration, persistence or pace, a five-point scale is used to rate the degree of limitation: none, mild, moderate, marked, and extreme. 20 C.F.R. §§404.1520a(c)(4) and 416.920a(c)(4). A "marked" limitation under the Regulations means "more than moderate but less than extreme." 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00(C). The "assessment of functional limitations is a complex and highly individualized process that requires [consideration] of multiple issues and all relevant evidence to obtain a longitudinal picture of [the] overall degree of functional limitation." 20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1).

AO 72
(Rev. 8/82)

only two, but no <u>repeated</u> episodes, of decompensation of extended duration.[7] (R. 19-20). Because plaintiff's mental impairments do not result in marked limitations in at least two areas, or one marked limitation in one area along with repeated episodes of decompensation, each of extended duration, the ALJ correctly found that plaintiff does not meet the "B" criteria of 12.04, 12.06 or 12.08.

Upon review of the record, this court is satisfied that the ALJ more than adequately explained why she found that plaintiff has mild limitations in activities of daily living, moderate difficulties in social functioning, and moderate limitations in concentration, persistence and pace, and that her finding is supported by substantial evidence as outlined in her decision. (R. 18-20). Although plaintiff now contends that she has "marked" limitations in social functioning and concentration, persistence or pace, she points to no specific objective medical evidence in the record that would support such a finding. Moreover, the state agency psychological consultant expressly concluded that plaintiff has moderate, not marked limitations in those two functional areas and that she does not meet or equal the B criteria of any listing. (R. 91).

Because plaintiff does not have marked limitations in any functional area, the ALJ correctly found that she does not meet the "B" criteria of Listing 12.04, 12.06 and 12.08. The ALJ has the final responsibility for determining whether a plaintiff's impairments meet or equal the requirement of a listing, 20 C.F.R. §§404.1527(d)(2) and 416.927(d)(2), and it is not

---

[7] Under the Regulations, the term "repeated episodes of decompensation, each of extended duration" means *three* episodes in *one* year, <u>or</u> an average of once every four months, each lasting for *at least* 2 weeks. 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00(C)(4). Here, plaintiff had two "episodes of decompensation" requiring inpatient hospitalization: from May 29, 2012, through June 11, 2012, and from April 18, 2013, through April 25, 2013, following "an extended period of noncompliance with all mental health treatment." (R. 19).

this court's function to re-weigh the evidence in rating the degree of functional limitations in the relevant areas. This court's task merely is to determine whether the ALJ's ratings are supported by substantial evidence, and is satisfied that they are in this case.

A social security claimant bears the burden of presenting medical findings equal in severity to a relevant listed impairment. *See* Sullivan v. Zebley, 493 U.S. 521, 531 (1990). Plaintiff failed to meet that burden here. Accordingly, the court is satisfied that the ALJ's step 3 finding is in accordance with the applicable regulations and that it is supported by substantial evidence.

Plaintiff's third argument is that the ALJ improperly evaluated the medical evidence. Specifically, plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Nolan, who conducted a consultative psychological examination of plaintiff and concluded that plaintiff has marked to extreme limitations in a number of work-related functional areas and that her mental condition "renders her unable to meet the ordinary demands of any employment." (R. 714). The ALJ afforded Dr. Nolan's opinion limited weight and substantial evidence supports the ALJ's evaluation of this evidence.

The rules by which the ALJ is to evaluate the medical evidence are well-established under the Social Security Regulations and the law of this circuit. Opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be

AO 72
(Rev. 8/82)

- 9 -

evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(c) and 416.927(c).

Importantly, the opinion of any physician, including a treating physician, as to the claimant's residual functional capacity, or on the ultimate determination of disability, never is entitled to special significance. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-5p. "The law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Rather, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); see 20 C.F.R. §§404.1527(d)(2) and (3) and 416.927(d)(2) and (3); 404.1546(c) and 416.946(c).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. The ALJ's decision specifically addressed the opinion evidence from Dr. Nolan and adequately explained why the ALJ was according his opinion "little weight." (R. 26-27). Specifically, the ALJ observed that Dr. Nolan's examination notes document "little objective evidence in support of the marked and extreme limitations assessed," that he did not have access to plaintiff's complete medical record and that his opinion is "quite inconsistent with the more moderate degree of limitation" assessed by other medical sources. (R. 27). Instead, Dr. Nolan's opinion "relied quite heavily" on plaintiff's own subjective reports of her symptoms and limitations, which Dr. Nolan "seemed to uncritically accept as true." (Id.)

The court finds no error in the ALJ's rejection of Dr. Nolan's unsupported opinion as to marked and extreme limitations. Initially, as already noted, it is for the ALJ alone to make the

ultimate determination of disability, and the opinion of any medical source that a claimant is disabled is not entitled to any special significance. Chandler, 667 F.3d at 361; 20 C.F.R. §§404.1527(d) and 416.927(d). Moreover, as the ALJ pointed out, the objective medical evidence, including Dr. Nolan's own examination, does not support the opinion that plaintiff is unable to work at all.

The court also finds no error in the ALJ's decision to give more credence to the assessment of the state agency psychologist, than to that of Dr. Nolan. It is well-settled that "[a]lthough treating and examining physician opinions often deserve more weight than the opinions of doctors who review records ... [s]tate agent opinions merit significant consideration as well." Chandler, 667 F.3d at 361. Pursuant to the Regulations, state agency medical consultants are considered to be "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(e)(2)(i) and 416.927(e)(2)(ii). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §§404.1527(e)(2)(ii) and 416.927(e)(2)(ii); SSR 96-6p. Substantial evidence in the record supports the ALJ's conclusion in this case that the opinion of the state agency psychologist is more consistent with the totality of the evidence than that of Dr. Nolan, and therefore the ALJ properly gave the state agency psychologist's opinion greater weight.

It is axiomatic in social security cases that the ALJ must give some indication of the evidence that she rejects and the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. Here, the ALJ reviewed and discussed all of the pertinent medical evidence and comprehensively explained her reasons for giving each relevant opinion the weight that she

gave it. (R. 19-27). In essence, plaintiff now is asking the court to re-weigh the medical evidence and arrive at a different conclusion than the ALJ. However, this court's task is not to conduct a *de novo* review nor to re-weigh the evidence; rather, review is limited to determining whether the ALJ's decision is supported by substantial evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff's fourth argument is that the ALJ's RFC finding that plaintiff can perform light work with enumerated exceptions is not supported by substantial evidence. Plaintiff avers that the ALJ's RFC finding fails to account for plaintiff's moderate difficulties in concentration, persistence or pace. She also contends that she is unable to perform a full range of light work with an at-will sit/stand option. Upon review, this court is satisfied that the ALJ's RFC finding is supported by substantial evidence.

Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his impairments. Fargnoli, 247 F.3d at 40; 20 C.F.R. §§404.1545(a)(1) and 416.945(a)(1). It is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work-setting on a regular and continuing basis, which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(3)-(4) and 416.945(a)(3)-(4); SSR 96-8p. The ALJ's residual functional

AO 72
(Rev. 8/82)

capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

The court is satisfied that the ALJ's residual functional capacity finding in this case is supported by substantial evidence as outlined in the decision. (R. 20-28). Contrary to plaintiff's contention, the RFC finding adequately accommodates plaintiff's moderate difficulties in concentration, persistence and pace in the residual functional capacity by limiting her to "jobs that can be learned in one month, involve only repetitive or short-cycle tasks, and no more than occasional decision making or judgment; no production rate or pace work; [and] no more than occasional work setting changes." (R. 20). *See, e.g.*, Parks v. Commissioner of Social Security, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010)( hypothetical limiting claimant to performing simple, unskilled work adequate to account for moderate limitations in concentration, persistence and pace); McDonald v. Astrue, 293 Fed.Appx. 941, 946-47 (3d Cir. 2008)(hypothetical limiting claimant to "simple, routine tasks" adequate to accommodate "moderate" limitations in concentration, persistence and pace); Menkes v. Astrue, 262 Fed.Appx. 410, 412-13 (3d Cir. 2008)(no error in hypothetical restricting claimant to "simple routine tasks" to account for moderate limitations in concentration, persistence and pace).

Likewise, there is no merit to plaintiff's complaint that she cannot perform the "full range" of light work with an at-will sit/stand option, as the ALJ did not find that plaintiff can perform the *full* range of light work, but instead found she can perform light work with the additional limitations enumerated, including the at-will sit/stand option, and the vocational expert explicitly testified that plaintiff would be able to perform the light jobs he identified with those restrictions.

Plaintiff's final argument is that the ALJ improperly evaluated plaintiff's subjective statements as to the severity of her pain and the limitations arising therefrom. However, the court is satisfied that the ALJ adhered to the appropriate standards in evaluating plaintiff's statements regarding her pain and limitations and more than adequately explained the reasons underlying her credibility determination.

As required under the regulations, the ALJ in this case properly considered plaintiff's subjective statements as to the intensity, persistence and limiting effects of her symptoms in light of the objective medical evidence, as well as all of the other factors relevant to plaintiff's symptoms as set forth in 20 C.F.R. §§404.1529(c) and 416.929(c). *See also* SSR 96-7p. The ALJ thoroughly explained in the decision why plaintiff's statements concerning "the intensity, persistence and limiting effects of her symptoms are not entirely credible." (R. 21-25). Specifically, the ALJ determined that the medical evidence does not support the degree of functional limitations alleged by plaintiff and noted that plaintiff's "treatment has been routine, conservative and notably effective when [plaintiff] is compliant." (R. 27). She further observed that plaintiff's admitted capacity to engage in certain activities of daily living is "suggestive of a greater functional capacity than alleged." (Id.) Accordingly, the ALJ reasonably concluded that there is "no credible indication in the record as a whole that plaintiff is more limited" than otherwise accounted for in the ALJ's RFC finding. (R. 28).

To the extent plaintiff alleges that the ALJ improperly relied on plaintiff's GAF scores[8] in discrediting her subjective allegations as to her mental health limitations, the court finds no

---

[8] The Global Assessment of Functioning ("GAF") score considered psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). The latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) no longer includes the GAF scale. *See* Hughes v. Colvin, 2016 WL 231676 at *2 n.2 (3d Cir., Jan. 20, 2016) (noting that the DSM-5 has abandoned the GAF scale as a measurement tool).

error in the ALJ's consideration of those scores in assessing plaintiff's credibility. Although the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements and standards of the Act, See 65 Fed.Reg. 50746, 50764-65 (2000), as with any other clinical findings contained in narrative reports of medical sources, the ALJ nevertheless is to consider and weigh those findings under the standards set forth in the regulations for evaluating medical opinion evidence. 20 C.F.R. §§404.1527(c) and 416.927(c).

Moreover, while it is true, as plaintiff now asserts, that sporadic and transitory activities of daily living cannot be used to show an ability to engage in substantial gainful activity, *see* Fargnoli, 247 F.3d at 40, n.5, the ALJ did not do so here. Instead, the ALJ properly considered plaintiff's allegations of debilitating pain and limitations in light of *not only* her activities of daily living but *also* in light of the objective medical evidence, which revealed the absence of clinical findings supporting plaintiff's allegations of totally debilitating pain and limitations. Based on *all* of the evidence, the ALJ found plaintiff's statements to be not entirely credible.

It also is important to emphasize that the ALJ did not reject plaintiff's testimony entirely. Rather, to the extent plaintiff's statements as to the limitations arising from her impairments are supported by the medical and other relevant evidence, the ALJ's residual functional capacity finding accommodated those limitations. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

The record demonstrates that the ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its own credibility determination. *See* Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003)(ALJ's conclusions as to the credibility of a claimant's subjective complaints generally are entitled to

great deference and should not be discarded lightly given the ALJ's opportunity to observe the claimant's demeanor). Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence, and is satisfied here that it is.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Katherine L. Niven, Esq.
Katherine L. Niven & Associates, PC
1909 N Front Street
2nd Floor
Harrisburg, PA 17102

John Valkovci, Jr.
Assistant U.S. Attorney
200 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901